In that case, this is Hamid Sow v. U.S. Attorney General. Mr. Kreisberg is here for the petitioner. Mr. Hulag is here for the respondent. And Mr. Kreisberg, I see you got here. Yes. To make you feel any better, I was almost late, too. Traffic between Birmingham and Montgomery was a total nightmare this morning. We were able to get in yesterday and had a nice day. Thank you very much, Your Honors, and may it please the Court. My name is Jeremy Kreisberg. I'm here on behalf of the petitioner, Hamid Sow. Hamid Sow has petitioned for relief because his asylum hearing was fundamentally unfair. When his attorney, Mr. Gurian, received affidavits that flatly contradicted the basis of his claim for past persecution on account of his sexual orientation, Mr. Gurian submitted those affidavits to the Court without any communication with Mr. Sow or any other inquiry into the reliability of that evidence. As a result, Mr. Sow has been denied asylum solely on the basis of an adverse credibility finding, despite the fact that we now know he has consistently told the truth about his persecution in Guinea on account of his sexual orientation. We have an arrest warrant that has been issued in Guinea that proves that Mr. Sow would be detained on account of his sexual orientation if he returns to his home country. And this arrest warrant not only proves that, but it also provides further proof of every material element of his testimony. It confirms that Mr. Sow is gay, or at the very least, perceived as gay in Guinea. It confirms that Mr. Sow was found engaging in sexual relations with his boyfriend in his uncle's home. And it confirms that Mr. Sow's boyfriend was then beaten, burned, and killed upon them being found. We are asking this Court to grant Mr. Sow an opportunity for a new fair proceeding, one at which he would have counsel that didn't affirmatively submit evidence that contradicted his account of the facts, that's unreliable and should never have been submitted, and a proceeding at which he can provide this new evidence that proves his claim in the strongest possible way. It's an arrest warrant issued by Guinea that shows that Mr. Sow would face persecution if he's returned to his home country. So let me, if we accept your argument that there was an abuse of discretion in failing to reopen his case in order to consider this new evidence, this arrest warrant that's been issued for him in Guinea, and it goes back, what happens when it goes back? You get a new hearing altogether, or the immigration judge just takes the arrest warrant into consideration, there's reconsideration? We would ask the Immigration Court to hold a new hearing, both because we think that this evidence, again, provides the strongest possible corroborating evidence for the account that he's provided consistently, shows that the affidavits submitted on his behalf that were consistent with his story are the ones that were accurate and reliable, and should provide a new basis for him to testify in a hearing that he's prepared for. But we do think there would be some discretion for the court to consider it however they would want to, and we would simply make the argument that a new hearing would be warranted if the case were reopened on the basis of, again, such strong evidence. I mean, the arrest warrant provides factual detail that aligns completely with Mr. Sow's account of the facts. It's really striking evidence when the court has before it an arrest warrant that shows that he would be detained on account of a sexual orientation and fled the country because he was found engaging in sexual relations with his boyfriend, and his boyfriend was then burned alive in his home country. So we think that evidence would be surely enough for the immigration judge to find persecution on account of sexual orientation, both in the past and in the future. On the ineffective assistance of counsel claim, which we also think is extremely strong, we pointed out a series of facts that the BIA has accepted as true, and this court would do the same. And it's all detailed in Mr. Sow's affidavit submitted to the BIA. I'd point the court to pages 70 to 73 of the record. And what it shows is that Mr. Sow repeatedly asked his attorney to show him the affidavits that would be submitted on his behalf. And Mr. Gurian consistently refused to provide those affidavits to Mr. Sow and consistently failed to secure an interpreter to have a communication with his client. In our view, when Mr. Gurian came across these affidavits that flatly contradicted Mr. Sow's account of the facts, told an entirely different story than Mr. Sow had consistently maintained, he had an obligation at a minimum at that point to have a conversation with his client and figure out whether this evidence was reliable or not. Mr. Gurian failed to do that and as a result submitted evidence that formed the sole basis for the immigration judge's finding against Mr. Sow. And we'd point out that the immigration judge was quite clear that absent that evidence and absent that inconsistency, he would have granted relief in this case. Page 445 of the record, the immigration judge says this is a case in which he would have granted asylum in a heartbeat. This is a classic case of prejudice as a result of deficient performance. But as Your Honor noted, we also have new evidence in this case that provides a separate ground for granting a new hearing. And this arrest warrant, again, is quite striking. And if the court doesn't agree with any of that, we also claim a future persecution on account of country reports that we think were ignored in this case. I think we have your argument. Thank you, Mr. Kreisberg. We'll hear from the respondent, Mr. Ohag. Your Honors, may it please the court. My name is Obamal Haque, representing formerly Mr. Sessions, now Mr. Barr. In this matter, this matter comes before the court in two cases that are related, a petition for review of removal order and a denial of a motion to reopen. I think what is undisputed here is that there was an adverse credibility finding based on inconsistencies between the respondents, excuse me, between Mr. So's testimony and the affidavits. All right, so can I just ask you a question because I'm going to be as nice about this as I know how to be. But I found your response to a very well-considered 24-page Roman I ineffective assistance of counsel claim in the blue brief bizarre. I had to sort of search the brief for it, and it seemed to be about two pages, one after sort of the necessary throat clearing about the standard, that just sort of went right back to adverse credibility finding. But their point is that how can that finding have ever taken place but for the ineffective assistance? This guy didn't read two contradictory affidavits, just put them in. They lead to this adverse credibility finding. And then the guy saying, well, you know, if I thought he was gay, I would have given him asylum. But I mean, how is that just not textbook ineffective assistance and obvious prejudice? Your Honor, I would like to refocus the court on what the Board of Immigration Appeals found, and that was a question related to fundamental unfairness based on the actions of counsel. And it found that there was no fundamental unfairness below. And the government's position would certainly be that there was actually no fundamental unfairness when you look at the course of the proceedings. What you have here is you have counsel who was able to muster this evidence. He was able to know enough of the claim to steer the testimony in a way that was meaningful, and he was able to object to evidence that he found objectionable and allowed the immigration court to give it reduced weight. He was able to elicit some rehabilitation when it came time to do so. He even asked for continuance of the matter, although he was not granted that continuance. He was asked for continuance of the matter in order to get new evidence. But, I mean, you led your argument by saying, you know, sort of adverse credibility determination based on these bad affidavits basically. And they say the affidavits were bad because the guy never even read them. And, I mean, do you have a contrary understanding of the evidence that, in fact, he did read and conscientiously determine, yeah, I'm going to submit two contradictory affidavits? I actually don't, Your Honor, and here's why. Because under matter of lazada, which this court's precedent in decaying appears to adopt, it requires substantial or exact compliance with the requirements of that. Now, admittedly, the board did not rely on whether or not there was substantial or exact compliance with matter of lazada. But to answer your question, Your Honor, here what we have is we have a drafted, as far as I can tell, a drafted bar complaint to the Florida Bar and email communication to Mr. Gurian, the attorney, in which they ask the attorney his position with related to these allegations of ineffective assistance of counsel. We have an informal communication from the attorney, which indicates that he has no comments. But I would also note in the record that he disagreed with the characterization of his assistance to Mr. Soh in the proceedings below, indicating that he didn't agree with how Mr. Ibrahim, one of Mr. Soh's friends who was helping him gather the evidence, he didn't agree with how that, at least from what I can tell, he didn't agree with how Mr. Ibrahim had characterized his efforts. So matter of lazada actually requires filing agreements with the bar and allowing the attorney to respond. That does not appear to have been done in this case. So even though that wasn't a finding of the board below, I would note for your honor that we don't actually have the position or the story of Mr. Gurian before this court. So but again, turning back to the board's finding, which was a question of fundamental fairness, you had, again, an attorney that was able to muster all this evidence to steer the testimony and object and render the arguments as necessary. And then he had opportunity to file at least three notices of filing in the record, Exhibits A through Q. It doesn't appear, at least to the government, that there was anything fundamentally unfair in the case when Mr. Gurian was able to muster all that evidence. It just feels a little bit like other than that, Mrs. Lincoln, how was the play? I mean, you know, other than the adverse credibility determination that is linked to these fatally contradictory affidavits, which are linked to a failure to communicate with the client, which are linked to the failure to get an interpreter, all this kind of stuff, stuff, stuff, stuff, stuff, stuff, stuff, stuff that he did, I don't know, leaves me a little empty. And I understand that, Your Honor. But since you've brought up the new evidence and the evidence that was submitted during the course of the administrative appeal, I would also note that even those continue to be inconsistent with Mr. So's testimony below, for example. Before you go to that, and I don't want to leave this point, when did he show Mr. So the affidavit? The Mr. Contrary to his evidence. So Mr. Gurian, there was, as I understand it, Mr. Gurian didn't show Mr. So the affidavit. The particularly, the particularly Problematic one. We'll call it problematic one. He didn't show it until the day of the hearing. Isn't that a bit substandard? I would say that it's substandard. Now, I don't think we can. Because, you know, a continuance prior to the date of the hearing would be, I would think, would be more favorably looked upon than one the day of the hearing, wouldn't it? Yes, Your Honor. But what I would say is that's not, that's not the standard that we're looking at here. We're looking at whether or not this, the proceeding below is fundamentally unfair and Well, doesn't that interfere with it being fair? If the one individual that arguably knows the truth doesn't even get to see the evidence that's going to be submitted until the day of the hearing? Do we, do we allow that to happen in any proceeding in this country? No, Your Honor. Will our criminal? Correct, Your Honor, no. But, again, the standard is not, here is not, I wouldn't say it's perfection or, and I wouldn't say that this was the best example of an attorney representing an alien in removal proceedings. Mr. So's case in a way that was meaningful. But going back to the point of the evidence and the inconsistencies that continue to be there, even after the benefit of counsel now, I would note that there's an affidavit from Mr. DeGibriel Berry in the record, which indicates that when he came to the house and saw the, saw the boyfriend of Mr. So, he was being beaten by his brother, by Mr. So's brother, specifically violently or aggressively. And Mr. So's testimony was that his brothers never touched Mr. Mr. Alpha Omar Berry, which is his boyfriend. So there actually continue to be these inconsistencies that don't necessarily correct the adverse credibility finding. Now, briefly on the future persecution finding, the reason that a future persecution finding was not, let me back up, the reason it's not necessary for this court to remand in order to make a, in order to order the board and the immigration judge to make a finding on future persecution is that, is because that the adverse credibility finding was on the fact of Mr. So's homosexuality. And not whether these incidents actually happened. So if the board and the immigration judge didn't believe that Mr. So established that he was homosexual, then it wouldn't be necessary to remand in order to show that he fears future persecution on account of his homosexuality. Are you saying that, I'm trying to follow that, are you saying that we can simply order the decision to be made that he would be persecuted and would be experiencing that legitimate fear? No, no. I apologize if I wasn't clear, Your Honor. What I'm trying to say is that there's, in an asylum claim, there's two separate prongs, if you will. There's a past persecution, which can establish a fear of persecution, a future persecution if you are returned to the home country. Alternatively, you can look in the absence of past persecution, you can look and see if there's a well-founded fear of future persecution. And what petitioner is attempting is to have this court remand, putting adverse, putting the ineffective assistance aside for a moment, to ask this court to remand this case in order to have the board and the immigration judge make an explicit finding as to future persecution on account of homosexuality. But if we don't get past the adverse credibility, based on the fact of being homosexual, then there's no purpose in remanding it to determine if he was persecuted on account of a sexual orientation that the board didn't believe he had. If they believe that he is homosexual in the country, and if the country has issued a warrant for his arrest, are you saying that if the immigration authorities, the board, the court, the judge, determined that he was less than completely honest when he said that his brothers did not participate in killing his boyfriend, that that should somehow or another preclude the consideration that the country could kill him when he returns based on the warrant? Yes. Yes, Your Honor, because it— Do you not have a problem with that? I will not comment on what my personal— I'm talking about you represent the United States. Does our country not have a problem with that? The— Are we willing to send someone back to their country knowing that they would be arrested, persecuted, if not killed, because of their sexual orientation? We absolutely would have a problem with sending a person back that the government believes, the government of the United States believes would be persecuted or tortured, and that is not something that this government wants to do. However— Is there any evidence that the arrest warrant, the active prosecution, if you will, in that country is not valid? No, because that evidence has not been analyzed as of yet as to its authenticity. Okay. Well, wouldn't that be more reason for us to direct that that be considered? Only if the court finds that there was such ineffective assistance such that the hearing was fundamentally unfair to allow the case to be reopened in order to consider this new evidence, which was not actually presented below. The regulations actually require that if new evidence is presented after an appeal is—after the case is in an appeal stage, then the new evidence has to be—it has to be demonstrated that the new evidence was—is material and previously unavailable. Is it material? I don't think there was any dispute that it would be material. Was it previously unavailable? That I don't know, Your Honor. Well, whose decision is that? That would be—in the first instance, that would be the board's decision. And shouldn't we there send it back to them to decide that? Only if, again, the court finds that there was ineffective assistance. If the court doesn't find that there's ineffective assistance— Then we can't direct them to consider this evidence whether or not it was truly newly discovered ever? That's correct. Okay. It just seemed like you're talking in a circle there or such. My apologies. To close, Your Honor, I can see how this is a sort of a difficult case for the court to grapple with. Admittedly, when I signed on to give this argument, I found it the same. Nevertheless, what I really would ask the court to consider is to truly consider the record as a whole and to understand that the standard is whether the hearing was so fundamentally unfair to deprive Mr. Soh of the ability to present a case. And while it is true that—well, it may be true, we don't know—that Mr. Gurian failed to take some steps to present a better case, I wouldn't say that it was so fundamentally unfair as to deprive him of his day in court. And so for that reason, Your Honors, the government requests that the board's decisions be affirmed. Thank you. Thank you, Mr. Ohad. Mr. Kreisberg, you have reserved some time. Thank you, Your Honor. I want to begin where the argument just concluded, which is the new evidence. Our motion to reopen based on the arrest warrant is separate and apart from our ineffective assistance of counsel claim. If the court disagreed entirely with us with respect to ineffective assistance, our motion to reopen would operate separately as an independent basis to grant a new hearing and remand this case. The fundamental fairness inquiry relates only to the ineffective assistance of counsel prong. The motion to reopen is a separate argument. The board rejected that argument on the basis that they did not think a different outcome may be warranted on the basis of the new evidence. As Your Honors have pointed out, that's just completely wrong. This is new evidence that shows a basis for persecution on account of his sexual orientation if he's returned to this country. Counsel, wouldn't that be the materiality question that your opponent there said he agrees without question it's material? Yes, I think that's right, Your Honor. And we think that conflicts with the sole basis for the board's decision, proves there was an abuse of discretion, and is an independent basis for a remand. I'd also point out that the legitimacy of this evidence has never been contested. And, in fact, we have an affidavit from a brigadier in the Guinean National Police Force, pages 70 to 19 of the record, that attests to the legitimacy of this warrant. With respect to ineffective assistance of counsel, I'd like to respond to the argument that there was no fundamental unfairness because of the course of the hearing. As Your Honors have pointed out, once we got to the hearing, it was already too late. Mr. Gurian had submitted evidence that flatly contradicted his client's account of the facts without any communication with his client. And when we got to the hearing as well, Mr. Gurian's ineffectiveness continued. As Mr. So provided in his affidavit, he was allowed to review all of the evidence only a half hour before the hearing. He was never told by Mr. Gurian what would happen at this hearing. He was never even told there would be a government attorney there to question him. So any opportunity for a fair hearing to happen not only was dissipated at the time that this evidence was presented, but continued when Mr. Gurian failed to prepare him for the hearing itself. Counsel, my friend on the other side, has raised matter of Lozada. We indicated our compliance with matter of Lozada on page 43 of the record in our brief to the board. The board never disputed our compliance with matter of Lozada. The government has never disputed our compliance with matter of Lozada until now. We would respectfully urge that this issue has been waived time and again. But even if there were any concerns, we've clearly complied as we explain in our footnote on page 43 of the record. We provide the affidavit that's required under matter of Lozada from our client at pages 70 to 73 of the record. We provide the communications with our client, the communications with Mr. Gurian, as well as Mr. Gurian's no comment in an email. Counsel for the other side indicated that Mr. Gurian disagreed with one aspect of our case, and that's true. Mr. Gurian took issue with one statement and one statement alone. Ibrahim, who was the individual who was collecting evidence in Boston and providing it to Mr. Gurian, Ibrahim said that he told Mr. Gurian about the inconsistencies in the affidavits and raised this issue with him. And Mr. Gurian says that never occurred. Even if we take Mr. Gurian's word for it, which this court doesn't have to because that's not what you do at this stage of the proceedings, but even if that's true, that doesn't dispute any of the material facts that we've relied on for ineffective assistance of counsel claim that Mr. Gurian was given these affidavits and submitted it without communication with his client. Even if Ibrahim didn't raise this issue to Mr. Gurian, Mr. Gurian, as an attorney, had an independent obligation to review that evidence. I also wanted to address the issue with respect to the purported inconsistency with respect to his brother beating his boyfriend. Mr. So's affidavit indicates that Mr. So was not there at the time that his boyfriend was being beaten. He fled after the time that he was found by his family to his friend Pascal's home. And that was the time that his brother would have been involved or not. And this is another indication of a time when effective counsel could have prepared his client to address any issue in this respect. This came up during the hearing after Mr. So didn't have an opportunity to review the evidence meaningfully, and he could have explained that he was not there at the time that his boyfriend was being beaten alive and burned alive. Do you have this case pro bono? Yes, we do. Good for you. There's nothing further. I ask the court to vacate and remand. Thank you, Mr. Prosper. And the court will be in recess for 15 minutes. All rise.